## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

**MAGNA MIRRORS OF AMERICA, INC.**
a Michigan corporation,

        Plaintiff,

           vs.

**FICOSA INTERNATIONAL S.A.** a foreign
corporation; **FICOSA NORTH AMERICA
CORPORATION**, a Michigan corporation; **FICOSA
NORTH AMERICA S.A. de C.V.**, a foreign
corporation; and **FICO MIRRORS, S.A.**, a foreign
corporation,

        Defendants.

Civil Action No. _____

Honorable: _____

DEMAND FOR JURY TRIAL

J. Michael Huget (P39150)
Deborah J. Swedlow (P67844)
Sarah E. Waidelich (admitted in New York;
admission to W.D. Mich. pending)
HONIGMAN MILLER SCHWARTZ AND COHN LLP
130 South First Street, Fourth Floor
Ann Arbor, Michigan 48104
Tel: (734) 418-4254
Fax: (734) 418-4255
mhuget@honigman.com
bswedlow@honigman.com
swaidelich@honigman.com
*Attorneys for Plaintiff Magna Mirrors of America, Inc.*

## COMPLAINT

      Pursuant to Rule 7(a) of the Federal Rules of Civil Procedure, Plaintiff MAGNA

MIRRORS OF AMERICA, INC. ("Magna Mirrors") hereby provides its Complaint against

Defendants FICOSA INTERNATIONAL S.A., FICOSA NORTH AMERICA CORPORATION,

FICOSA NORTH AMERICA S.A. de C.V., and FICO MIRRORS, S.A. (collectively, "Ficosa"

or "Defendants") for patent infringement and breach of contract.

## THE PARTIES

1.    Plaintiff Magna Mirrors is a corporation organized and existing under the laws of the State of Michigan, having a registered address of 601 Abbot Road, East Lansing, Michigan 48823.

2.    Historically, Magna Mirrors has also done business under the registered assumed names of "Donnelly Corporation" and "Magna Donnelly Corporation". In October 2002, a subsidiary of Magna International Inc. acquired all the outstanding shares of Donnelly Corporation. In 2003, Donnelly Corporation changed its name to Magna Donnelly Corporation. In 2008, Magna Donnelly Corporation changed its name to Magna Mirrors of America Inc. For purposes of this Complaint, Magna Mirrors of America Inc., Magna Donnelly Corporation and Donnelly Corporation will collectively be referred to as "Magna Mirrors".

3.    Magna Mirrors is a leading designer and manufacturer of exterior and interior mirror systems for the automotive industry, and has a place of business in this jurisdiction at 5085 Kraft Ave. S.E., Kentwood, Michigan 49512.

4.    Upon information and belief, Ficosa International S.A. ("Ficosa International") is a foreign business with its principal place of business in Barcelona, Spain, which has transacted business within the State of Michigan. Based on information and belief, Ficosa International, on its own and through its subsidiaries, imports, manufactures and supplies infringing mirror systems, assemblies and components in and into the United States, including within this Judicial District.

5.  Ficosa North America Corporation ("Ficosa NA") is a Michigan corporation with its registered address at 30870 Stephenson Highway, Madison Heights, Michigan 48071. Based on information and belief, Ficosa NA operates as a subsidiary of Ficosa International. Based on information and belief, Ficosa NA imports, manufactures and supplies infringing mirror systems, assemblies and components in the United States, including within this Judicial District.

6.  Upon information and belief, Ficosa North America S.A. de C.V. ("Ficosa Mexico") is a foreign business with its principal place of business in Nuevo Leon, Mexico, which has transacted business within the State of Michigan. Based on information and belief, Ficosa Mexico operates as a subsidiary of Ficosa International. Further based on information and belief, Ficosa Mexico imports, manufactures, and supplies infringing mirror systems, assemblies and components into the United States, including within this Judicial District.

7.  Upon information and belief, Fico Mirrors, S.A. ("Ficosa Spain") is a foreign business with its principal place of business in Barcelona, Spain, which has transacted business within the State of Michigan and in connection with Ficosa NA. Based on information and belief, Ficosa Spain operates as a subsidiary of Ficosa International. Based on information and belief, Ficosa Spain imports, manufactures and supplies infringing mirror systems, assemblies and components in and into the United States, including within this Judicial District.

8.       Upon information and belief, the Ficosa defendants collaborate to design, engineer, make, use, sell, offer to sell, validate, distribute and import automotive exterior rearview mirror systems, and assemblies and components thereof, for all types of vehicles in and into the United States, including within this Judicial District, including automotive exterior mirror systems, assemblies and components that infringe Magna Mirrors' intellectual property rights.

## JURISDICTION AND VENUE

9.       This action arises under the patent laws of the United States, Title 35, Sections 101 and 271, of the United States Code.

10.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11.      This Court also has subject matter jurisdiction over related state contract claims pursuant to the doctrine of supplemental jurisdiction under 28 U.S.C. § 1367.

12.      Upon information and belief, this Court has personal jurisdiction over the Defendants because they regularly and continuously engage in substantial sales and other business transactions in the Western District of Michigan, and have sold infringing products and/or committed infringing acts in this Judicial District. Further, Defendants have placed infringing mirror systems, assemblies and components into the stream of commerce knowing and intending that this Judicial District was and is a likely destination of those infringing mirror systems, assemblies and components. This Court has personal jurisdiction over the Defendants because they have caused injury to Plaintiff in this Judicial District. Further, based upon information and belief, Defendants have substantial contacts with the forum as a result of pervasive business activities conducted within the

State of Michigan and within this Judicial District, including but not limited to the selling or offering for sale of infringing automotive exterior mirror systems (and assemblies and components thereof).

13. Upon information and belief, this Court also has personal jurisdiction over Ficosa NA by virtue of it being incorporated or organized in Michigan and doing business in the State of Michigan.

14. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400.

15. At least with respect to the Ficosa License Agreements, *see infra*, Ficosa NA and Ficosa Mexico have agreed that such agreements shall be governed by, and construed in accordance with, the laws of the State of Michigan, further supporting jurisdiction and venue in this Judicial District.

## BACKGROUND ALLEGATIONS

16. Magna Mirrors has numerous patents in the United States and other areas of the world relating to automotive exterior mirror systems incorporating lights (such as a security light and/or a warning light and/or a turn signal light), and assemblies and components thereof. Over the years, this patent portfolio has been recognized within the automotive industry and a number of automotive industry participants, including Magna Mirrors' direct competitors, have entered into, and honor, license agreements with Magna Mirrors in order to have access to this patented technology.

### Patents-in-Suit

17. On January 26, 1999, the United States Patent and Trademark Office ("PTO") duly and legally issued United States Patent No. 5,863,116 (the "'116 patent"), entitled "Remote-

Actuated Exterior Vehicle Security Light." A true and correct copy of the `116 patent is attached as Exhibit A and is made a part of this Complaint.

18. On July 11, 2000, the PTO duly and legally issued United States Patent No. 6,086,229 (the "'229 patent"), entitled "Vehicle Exterior Mirror System With Signal Light Assembly." A true and correct copy of the `229 patent is attached as Exhibit B and is made a part of this Complaint.

19. On October 2, 2001, the PTO duly and legally issued United States Patent No. 6,296,379 (the "'379 patent"), entitled "Vehicle Exterior Mirror System With Turn Signal Light Assembly." A true and correct copy of the `379 patent is attached as Exhibit C and is made a part of this Complaint.

20. On August 28, 2012, the PTO duly and legally issued United States Patent No. 8,251,555 (the "'555 patent"), entitled "Lighted Exterior Mirror Assembly For Vehicle." A true and correct copy of the `555 patent is attached as Exhibit D and is made a part of this Complaint.

21. On March 12, 2013, the PTO duly and legally issued United States Patent No. 8,393,766 (the "'766 patent"), entitled "Lighted Exterior Mirror Assembly For Vehicle." A true and correct copy of the `766 patent is attached as Exhibit E and is made a part of this Complaint.

22. On April 15, 2014, the PTO duly and legally issued United States Patent No. 8,696,179 (the "'179 patent"), entitled "Lighted Exterior Mirror Assembly For Vehicle." A true and correct copy of the `179 patent is attached as Exhibit F and is made a part of this Complaint.

23.     On December 6, 1994, the PTO duly and legally issued United States Patent No. 5,371,659, entitled "Remote-Actuated Exterior Vehicle Security Light." On March 20, 2007, a Reexamination Certificate was duly and legally issued by the PTO. A true and correct copy of the 5,371,659 patent and Reexamination Certificate are attached as Exhibit G and are made a part of this Complaint (hereinafter the "'659 patent").

24.     On March 5, 1996, the PTO duly and legally issued United States Patent No. 5,497,306, entitled "Exterior Vehicle Security Light." On November 13, 2007, a Reexamination Certificate was duly and legally issued by the PTO. A true and correct copy of the 5,497,306 patent and Reexamination Certificate are attached as Exhibit H and are made a part of this Complaint (hereinafter the "'306 patent").

25.     On March 5, 1996, the PTO duly and legally issued United States Patent No. 5,497,305, entitled "Remote-Actuated Exterior Vehicle Security Light." On September 19, 2006, a Reexamination Certificate was duly and legally issued by the PTO. A true and correct copy of the 5,497,305 patent and Reexamination Certificate are attached as Exhibit I and are made a part of this Complaint (hereinafter the "'305 patent").

26.     On September 23, 1997, the PTO duly and legally issued United States Patent No. 5,669,699 (the "'699 patent"), entitled "Exterior Vehicle Security Light." A true and correct copy of the `699 patent is attached as Exhibit J and is made a part of this Complaint.

27.     On October 20, 1998, the PTO duly and legally issued United States Patent No. 5,823,654 (the "'654 patent"), entitled "Universal Exterior Vehicle Security Light." A true and correct copy of the `654 patent is attached as Exhibit K and is made a part of this Complaint.

28. On March 9, 1999, the PTO duly and legally issued United States Patent No. 5,879,074 (the "'074 patent"), entitled "Exterior Vehicle Security Light." A true and correct copy of the `074 patent is attached as Exhibit L and is made a part of this Complaint.

29. On June 13, 2000, the PTO duly and legally issued United States Patent No. 6,074,077 (the "'077 patent"), entitled "Security Lighted Vehicular Exterior Rearview Mirror System." A true and correct copy of the `077 patent is attached as Exhibit M and is made a part of this Complaint.

30. On August 8, 2000, the PTO duly and legally issued United States Patent No. 6,099,155 (the "'155 patent"), entitled "Security Lighted Vehicular Exterior Rearview Mirror System." A true and correct copy of the `155 patent is attached as Exhibit N and is made a part of this Complaint.

31. On November 5, 2002, the PTO duly and legally issued United States Patent No. 6,474,853 (the "'853 patent"), entitled "Vehicular Rearview Mirror Assembly System." A true and correct copy of the `853 patent is attached as Exhibit O and is made a part of this Complaint.

32. On November 28, 2006, the PTO duly and legally issued United States Patent No. 7,140,755 (the "'755 patent"), entitled "Security Lighted Exterior Rearview Mirror System For A Vehicle." A true and correct copy of the `755 patent is attached as Exhibit P and is made a part of this Complaint.

33. The United States Patents identified in Paragraphs 17 through 32 above are collectively referred to herein as the "Patents-in-Suit".

34. The Patents-in-Suit are directed, *inter alia*, to automotive lighted exterior mirror systems for automobiles, and assemblies and components thereof.

35.    The following Patents-in-Suit have expired: '755 patent, '853 patent, '379 patent, '155 patent, '229 patent, '077 patent, '074 patent, '116 patent, '654 patent, '699 patent, '306 patent, '305 patent, and the '659 patent (collectively, "Expired Patents").

36.    Magna Mirrors is the current assignee of all right, title, and interest in the Patents-in-Suit, including the right to bring and maintain this action with respect to the Patents-in-Suit.

## AGREEMENTS BETWEEN MAGNA MIRRORS AND CERTAIN FICOSA DEFENDANTS

### 2002 License Agreement

37.    On or about February 1, 2002, Donnelly Corporation on the one hand and Ficosa NA and Ficosa Mexico (collectively, "Ficosa NA/MX") on the other hand executed a License Agreement ("2002 License Agreement") granting Ficosa NA/MX, as well as defined Ficosa affiliates, a non-exclusive, worldwide, royalty-bearing license to certain Donnelly Corporation patents to make, have made, import, use, offer for sale and sell licensed Ficosa products that comprise turn signal lights, defined under the 2002 License Agreement.

38.    A true and accurate copy of the 2002 License Agreement is attached hereto as Exhibit Q.

39.    The Donnelly Corporation patents licensed in the 2002 License Agreement are identified in Paragraph 1.6 of the 2002 License Agreement (the "2002 License Agreement Patents").

40.    Under the 2002 License Agreement, Ficosa NA/MX was granted a license to the 2002 License Agreement Patents for any licensed automotive exterior rearview mirror, which is designed for use in, and is used in, the General Motors Corporation ("GM") GMT-610 Program, which means all vehicle models based on the platform then being developed by

GM or its affiliates under the codename GMT-610. Licensed products under the 2002 License Agreement specifically do not include any automotive exterior rearview mirror assembly used in a vehicle model which is not part of the GM GMT-610 Program.

41. In exchange for the license, Ficosa NA/MX agreed to pay Donnelly Corporation royalties as detailed in the 2002 License Agreement.

42. Ficosa NA/MX further agreed in the 2002 License Agreement that they would "not make, have made, use, sell, offer for sale or import any automotive exterior rearview mirror system comprising turn signal lights, or any subassembly or component for use in an automotive exterior mirror system comprising turn signal lights, in, to or from any country in which any valid Licensed Donnelly Patent Claim covering such a system, subassembly or component is in force except under the terms of the license granted herein or as otherwise authorized in writing by Donnelly." Exhibit Q, Para. 4.2.

43. The term of the 2002 License Agreement continues until the expiration date of the last to expire of the 2002 License Agreement Patents.

44. Magna Mirrors currently owns all rights under the 2002 License Agreement.

**2004 License Agreement**

45. On or about April 1, 2004, Donnelly Corporation and Ficosa NA/MX executed a second License Agreement ("2004 License Agreement") granting Ficosa NA/MX, as well as defined Ficosa affiliates, a non-exclusive, worldwide, royalty-bearing license to certain Donnelly Corporation patents to make, have made, import, use, offer for sale and sell licensed Ficosa products that comprise ground illumination lighting, defined under the 2004 License Agreement.

46. A true and accurate copy of the 2004 License Agreement is attached hereto as Exhibit R.

47.  The Donnelly Corporation patents licensed in the 2004 License Agreement are identified in Paragraph 1.6 of the 2004 License Agreement (the "2004 License Agreement Patents").

48.  Under the 2004 License Agreement, Ficosa NA/MX  was granted a license to the 2004 License Agreement Patents for any automotive exterior rearview assembly, which is designed for use in, and is used in, the Ford CD338 Program, which means all vehicle models produced on the platform then being developed by Ford Motor Company ("Ford") under the codename CD338. Licensed products under the 2004 License Agreement specifically do not include any automotive exterior rearview mirror assembly used in a vehicle model which is not part of the Ford CD338 Program.

49.  In exchange for the license, Ficosa NA/MX agreed to pay Donnelly Corporation royalties as detailed in the 2004 License Agreement.

50.  Ficosa NA/MX further agreed in the 2004 License Agreement that they would "not make, have made, use, sell, offer for sale or import any automotive exterior rearview mirror system comprising ground illumination lights, or any sub-assembly or component for use in an automotive exterior mirror system comprising ground illumination lights, in, to or from any country in which any valid Licensed Donnelly Patent Claim covering such a system, sub-assembly or component is in force except under the terms of the license granted herein." Exhibit R, Para. 4.2.

51.  The term of the 2004 License Agreement continues until the expiration date of the last to expire of the 2004 License Agreement Patents.

52.  Magna Mirrors currently owns all rights under the 2004 License Agreement.

## 2006 License Agreement

53.     On or about December 21, 2006, Donnelly Corporation and Ficosa NA/MX executed yet another License Agreement ("2006 License Agreement") granting Ficosa NA/MX, as well as defined Ficosa affiliates, a non-exclusive, worldwide, royalty-bearing license to certain Donnelly Corporation patents to make, have made, import, use, offer for sale and sell licensed Ficosa products that comprise ground illumination lighting, defined under the 2006 License Agreement.

54.     A true and accurate copy of the 2006 License Agreement is attached hereto as Exhibit S.

55.     The Donnelly Corporation patents licensed in the 2006 License Agreement are identified in Paragraph 1.6 of the 2006 License Agreement (the "2006 License Agreement Patents").

56.     Under the 2006 License Agreement, Ficosa NA/MX was granted a license to the 2006 License Agreement Patents for any licensed automotive exterior rearview assembly, which is designed for use in, and is used in, the Ford Motor Company's ("Ford") Ford CD3 Program, which means all vehicle models based on the platform then being developed by Ford or its affiliates under the codename Ford CD3. Licensed products under the 2006 License Agreement specifically do not include any automotive exterior rearview mirror assembly used in a vehicle model which is not part of the Ford CD3 Program.

57.     In exchange for the license, Ficosa NA/MX agreed to pay Donnelly Corporation royalties as detailed in the 2006 License Agreement.

58.     The term of the 2006 License Agreement continues until the expiration date of the last to expire of the 2006 License Agreement Patents.

59.     Magna Mirrors currently owns all rights under the 2006 License Agreement.

**Other License Agreements Acquired By Ficosa**

60.     In addition to the 2002, 2004 and 2006 License Agreements, Ficosa has, through various

acquisitions, become the licensee on a number of additional licenses (see chart below)

owned and controlled by Magna Mirrors:

| Date of Agreement | Original Parties to Agreement | Covered Program | Paragraph Identification of Licensed Patents |
|---|---|---|---|
| February 19, 1999 | Donnelly Corp. and Delbar Products Inc. | General Motors Corporation's GMT 800 Program | Paragraph 1.7 to License Agreement |
| February 1, 2002 | Donnelly Corp. and Bing-Lear Manufacturing Group | Ford Motor Company's V229 Program | Paragraph 1.7 to License Agreement |
| June 8, 2005 | Magna Donnelly Corp. and Bing Assembly Systems LLC | Toyota Motor Corporation's 291W Program | Paragraph 1.7 to License Agreement |
| September 1, 2001 | Donnelly Corp. and Ichikoh Manufacturing, Inc. | Nissan Motor Company's Nissan UL Program | Paragraph 1.6 to License Agreement |
| January 1, 2003 | Donnelly Corp. and Ichikoh Manufacturing, Inc. | General Motors Corporation's GMT 820 Program | Paragraph 1.7 to License Agreement |
| October 7, 2004 | Donnelly Corp. and Ichikoh Manufacturing, Inc. | Toyota Motor Corporation's Toyota Sienna 033L Program | Paragraph 1.7 to License Agreement |
| May 11, 2009 | Donnelly Corp. and Ichikoh Mitsuba Inc. | Nissan Motor Co., Ltd.'s Nissan L42C (Maxima) Program | Paragraph 1.7 to License Agreement |

61.     The relevant terms of the above-described license agreements are similar.  In each one,

Donnelly Corporation granted the licensee a non-exclusive, worldwide, royalty-bearing

license to certain Donnelly Corporation patents to make, have made, import, use, offer

for sale and sell licensed products as similarly defined under each agreement.  True and

correct copies of each of the above-described license agreements are attached hereto as Exhibits T to Z ("Acquired Licenses").

62. The Donnelly Corporation patent estates licensed in the Acquired Licenses are substantially similar and are proscribed in each agreement as identified above by specific paragraphs (collectively, "Acquired License Agreement Patents").

63. Under the Acquired Licenses, each licensee was granted a license to the Donnelly Corporation patents for any licensed automotive exterior rearview assembly, which is designed for use in, and is used in, the various Programs as described in the above chart. Licensed products under the Acquired Licenses do not include any automotive exterior rearview mirror assembly used in a vehicle model which is not part of the Program.

64. Under the Acquired Licenses, each licensee agreed to pay Donnelly Corporation a royalty per each licensed product.  Each Acquired License continues until the expiration date of the last to expire of the defined Donnelly Corporation patents.

65. Under the Acquired Licenses, each licensee further agreed to a representation substantially identical to the representation provisions made by Ficosa NA/MX in the 2002 and 2004 License Agreements. *See supra*, Paras. 42, 50.

66. Upon information and belief, Delbar Products, Inc. transferred its rights under the February 19, 1999 Agreement to Ficosa NA.

67. Upon information or belief, Ficosa acquired the rights under the February 1, 2002 Agreement on or about March 8, 2011.

68. Upon information or belief, Bing Assembly Systems LLC transferred its rights under the June 8, 2005 Agreement with Donnelly Corporation to Camryn.  Further, upon

information or belief, on or about March 8, 2011, Camryn transferred its acquired rights under the June 8, 2005 Agreement to Ficosa.

69.     Upon information or belief, Ichikoh Manufacturing, Inc. transferred its rights under the September 1, 2001 Agreement, its rights under the October 7, 2004 Agreement, and its rights under the January 1, 2003 Agreement to Ichikoh Mitsuba, Inc. ("IMIC"). Further, upon information or belief, in or around 2010, IMIC transferred its acquired rights under these agreements to Ficosa.

70.     Upon information or belief, in or around 2010, IMIC transferred its rights under the May 11, 2009 Agreement to Ficosa.

71.     Ficosa is the licensee under the Acquired Licenses.

72.     Magna Mirrors is the licensor under the Acquired Licenses.

**Ficosa's Non-Payment of Royalties**

73.     Pursuant to the 2002, 2004 and 2006 License Agreements ("Ficosa License Agreements"), Ficosa NA/MX sells and has sold certain automotive exterior mirror systems incorporating lights (such as a ground illumination light and/or a turn signal light), and assemblies and components thereof, that were covered by the 2002 License Agreement Patents, the 2004 License Agreement Patents, and the 2006 License Agreement Patents (collectively, "License Agreement Patents").

74.     Pursuant to the Acquired Licenses, Ficosa sells and has sold certain automotive exterior mirror systems incorporating lights (such as a ground illumination light and/or a turn signal light), and assemblies and components thereof, that were covered by the Acquired License Agreement Patents.

75. Based upon information and belief, until in or around March 2013, Ficosa NA/MX paid royalties under the Ficosa License Agreements.

76. Based upon information and belief, until in or around March 2013, Ficosa paid royalties under the Acquired Licenses.

77. In or around 2013, however, Ficosa NA/MX and any responsible Ficosa defendant, without explanation or justification, ceased paying Magna Mirrors royalties due and owed under the Ficosa License Agreements and the Acquired Licenses.

78. Since in or around 2012, Magna Mirrors communicated with Ficosa to address the non-payment of royalties. Although Magna Mirrors engaged in numerous efforts to resolve the dispute over the unpaid royalties, the parties did not reach a resolution.

79. Based upon information and belief, Ficosa and its affiliates have continued to make, use, sell, offer for sale, distribute and/or import automotive exterior mirror systems incorporating lights (such as a security light and/or a warning light and/or a turn signal light) and assemblies and components thereof, that embody one or more claims of each of the Patents-in-Suit ("Accused Products") and that are covered by the Ficosa License Agreements and Acquired Licenses, despite their non-payment of royalties.

80. Magna Mirrors has demanded payment of compensation from Ficosa for products that Ficosa has sold or provided to customers for a number of vehicles not permitted under the Ficosa License Agreements or Acquired Licenses.

81. Despite Magna Mirrors' repeated requests for compensation, Ficosa fails to perform under, and Ficosa is in breach of, the Ficosa License Agreements and Acquired Licenses.

**Ficosa's Infringing Activity**

82. Magna Mirrors owns all rights, title and interest in the Patents-in-Suit.

16

83.     Based upon information and belief, Ficosa NA, Ficosa Mexico, Ficosa Spain, and Ficosa International, and beyond the scope of any license agreement, design, make, use, sell, offer to sell, and/or import Accused Products, including but not limited to the mirror assembly in Fig. 1 below, and Ficosa will continue to do so unless enjoined by this Court.



Fig. 1

84.     Defendants are manufacturers, distributors and marketers of automotive components, including exterior rearview mirrors for all types of vehicles, including but not limited to the mirror assembly in Fig. 1.

85.     Based upon information and belief, Ficosa is making, using, selling, offering to sell, distributing and/or importing Accused Products at least to Volkswagen, Nissan, Ford, GM, Chrysler, and Toyota for vehicles and programs that are not, or have never been, covered by any Magna Mirrors license.

86.     Based upon information and belief, Ficosa is making, using, selling, offering to sell, distributing, and/or importing Accused Products at least to Ford, Toyota, GM, Volkswagen, Chrysler, and Nissan for vehicles and programs that are subject to a Magna Mirrors license as described herein; Ficosa is not, however, paying any royalties for those sales.

87.  Such activities are also in breach of express representations made by Ficosa NA/MX in the 2002 and 2004 License Agreements and such activities are also in breach of express representations made in the Acquired Licenses.

88.  The Ficosa defendants are part of a sophisticated family of companies that is aware of the intellectual property rights of others in the relevant automotive industry. Upon information and belief, Ficosa regularly conducts searches for patents related to its products. Also based upon information and belief, and as reflected on the Ficosa website http://www.ficosa.com/wps/wcm/connect/ficosa/WebPublica_EN/Productos/ListadoGrupoProductos/RearViewSystem/, Ficosa has secured its own patents related to lighted mirror assemblies for vehicles and is, therefore, knowledgeable and well aware of the patent landscape among its competitors. Thus, a reasonable inference is that Ficosa is aware of the Patents-in-Suit. Magna Mirrors asserts that this reasonable inference is true.

89.  Magna Mirrors prominently marks its automotive mirror assemblies with U.S. Patents 6,074,077; 5,823,654; 5,371,659; and 6,149,287. Magna Mirrors hereby asserts that there is a reasonable inference that Ficosa has had knowledge of one or more of the Patents-in-Suit prior to the filing of this Complaint. Magna Mirrors asserts that this reasonable inference is true.

90.  Moreover, with respect to the patents that were licensed by Magna Mirrors to Ficosa in the Ficosa License Agreements and Acquired Licenses, Ficosa had actual notice of those Patents-in-Suit prior to the filing of this Complaint.

91.  Before the filing of this Complaint, Magna Mirrors has transmitted multiple email communications to Ficosa NA's General Manager, Mr. Frederick Zicard, asking Ficosa to respect the intellectual property rights of Magna Mirrors, identifying certain Patents-

in-Suit in each emailed communication. Thus, Ficosa has had actual knowledge of the Patents-in-Suit prior to the filing of this Complaint.

92.    Therefore, Ficosa has had knowledge of Magna Mirrors' Patents-in-Suit for years.

93.    Further, Ficosa has also had actual knowledge that it has infringed, and continues to infringe, Magna Mirrors' Patents-in-Suit.

## COUNT I

## DIRECT INFRINGEMENT OF THE PATENTS-IN-SUIT (VIOLATION OF 35 U.S.C. §§ 101 AND 271)

### Ficosa Defendants

94.    Magna Mirrors repeats and re-alleges the allegations contained in Paragraphs 1- 93 above as if fully set forth herein.

95.    Ficosa has made, used, offered for sale, and sold in the United States, and continues to make, use, offer for sale, and sell in the United States Accused Products that have never been licensed by Magna Mirrors to any Ficosa entity.

96.    The vehicles or programs for which Ficosa supplies Accused Products without a license include, but are not limited to, Ford Focus, Ford Escape, Ford C Max, Ford Freestar, Ford Cross Trainer, Toyota Avalon, Toyota Sienna, Toyota Venza, Toyota 500N, Dodge RAM, Volkswagen Jetta, Volkswagen Passat, Volkswagen Beetle, Buick LaCrosse, GM or Chevy Express, Nissan UL, Nissan Maxima, and Nissan Sentra.

97.    Ficosa's activities infringe the Patents-in-Suit. These activities include, but are not limited to, offering for sale and selling Accused Products to customers. As a non-limiting example, upon information and belief, Ford Motor Company, General Motors Company, Volkswagen, Nissan Motor Co., Ltd, Chrysler Group LLC (now FCA US LLC) and

Toyota Motor Company are customers of Ficosa for the Accused Products. By making, using, offering for sale, and/or selling the Accused Products in the United States, Ficosa is infringing claims of the Patents-in-Suit under 35 U.S.C. § 271(a).

98.     Ficosa has also made, used, offered for sale, and sold in the United States Accused Products that were once subject to either of the Ficosa License Agreements or the Acquired Licenses but are no longer licensed insofar as Ficosa now operates outside the scope of the licenses due to non-payment of royalties. Ficosa's activities infringe the Patents-in-Suit. These activities include, but are not limited to, offering for sale and selling Accused Products to customers. As a non-limiting example, upon information and belief, Ford Motor Company, General Motors Company, Volkswagen AG, Nissan Motor Co., Ltd, Chrysler Group LLC (now FCA US LLC) and Toyota Motor Company are customers of Ficosa for the Accused Products. By making, using, offering for sale, and/or selling the Accused Products in the United States, Ficosa infringed claims of the Patents-in-Suit under 35 U.S.C. § 271(a).

99.     With regard to the Expired Patents, to the extent Ficosa NA/MX or any other Ficosa entity ceased paying Magna Mirrors royalties and/or failed to pay royalties on the covered/licensed programs prior to the expiration date of the Expired Patents, Ficosa made, used, offered for sale, and sold in the United States Accused Products that infringe the Expired Patents. Ficosa's activities infringed the Expired Patents. These activities included, but are not limited to, offering for sale and selling Accused Products to customers. As a non-limiting example, upon information and belief, Ford Motor Company, General Motors Company, Volkswagen AG, Nissan Motor Co., Ltd, Chrysler Group LLC (now FCA US LLC) and Toyota Motor Company are or were customers of

Ficosa for the Accused Products. By making, using, offering for sale, and/or selling the Accused Products in the United States, Ficosa infringed claims of the Patents-in-Suit under 35 U.S.C. § 271(a).

100. The manufacture, use, sale, offer for sale, and importation of Ficosa's Accused Products directly infringes at least one claim of each of the Patents-in-Suit. Plaintiff has suffered damages as a result of the infringing activities of Ficosa, and will continue to suffer such damages as long as those infringing activities continue.

101. Ficoca was notified of its infringement of the Patents-in-Suit prior to the filing of this Complaint and at least as early as the filing of this Complaint.

102. Upon information and belief, Ficosa has had knowledge of the Patents-in-Suit since before the filing of this Complaint. Based on the facts alleged above in Paragraphs 88-93, it is reasonable to infer that Ficosa has had knowledge of the Patents-in-Suit since their issuance. Alternatively, if Ficosa asserts that it had no knowledge of the Patents-in-Suit prior to the filing of this Complaint, Ficosa was willfully blind to a competitor's patent rights.

103. With knowledge of the Patents-in-Suit, Ficosa continues to infringe the Patents-in-Suit.

104. It is reasonable to infer based on the facts set forth above in Paragraphs 88-93, and because of the existence of numerous license agreements between Magna Mirrors and Ficosa, that Ficosa's infringing conduct has been willful, wanton and deliberate. It is also reasonable to infer that Ficosa's actions have been objectively reckless based on the facts set forth in Paragraphs 88-93 above. The actions of Ficosa with regard to infringement of the Patents-in-Suit are willful such that Magna Mirrors is entitled to treble damages under 35 U.S.C. § 284.

105.    Ficosa's infringement of the Patents-in-Suit has been intentional and willful, making this an exceptional case.

106.    Despite any statement to the contrary, and upon information and belief, Ficosa will continue to infringe the Patents-in-Suit unless enjoined by the Court.

107.    Upon information and belief, Ficosa's infringement has resulted in damage to Magna Mirrors and will continue to do so unless enjoined by this Court.

108.    Magna Mirrors has no adequate remedy at law. Unless enjoined by this Court, Ficosa will continue such acts of infringement, causing Magna Mirrors to incur substantial and irreparable damage.

## COUNT II

## INDIRECT INFRINGEMENT OF THE PATENTS-IN-SUIT (VIOLATION OF 35 U.S.C. §§ 101 AND 271)

### Ficosa Defendants

109.    Magna Mirrors repeats and re-alleges the allegations contained in Paragraphs 1- 108 above as if fully set forth herein.

110.    Claims of the Patents-in-Suit are directed to automotive exterior mirror systems, incorporating lights (such as a security light and/or a warning light and/or a turn signal light) and assemblies and components thereof. In order for these to provide the intended function, they must be installed on a vehicle. Accused Products are, therefore, intended to be installed on or attached to vehicles; otherwise, the Accused Products are useless without infringing the Patents-in-Suit. Magna Mirrors asserts that this reasonable inference is true.

111.    On its website,

http://www.ficosa.com/wps/wcm/connect/ficosa/WebPublica_EN/Productos/ListadoGrup

oProductos/RearViewSystem/, Ficosa states that, as a market leader, it develops and produces rearview mirrors for all automobile manufacturers worldwide, including rearview mirrors incorporating lighting.

112. The reasonable inference drawn from the facts set forth above is that the Accused Products are a material part of the systems claimed in the Patents-in-Suit and that they are not a staple item of commerce suitable for substantial noninfringing use. The Accused Products have no use without infringing the Patents-in-Suit. Magna Mirrors asserts that this reasonable inference is true.

113. Another reasonable inference from the facts set forth above is that Ficosa knowingly and actively induced—and continues to induce—its customers to install its Accused Products on vehicles. Ficosa knowingly and actively requires its customers to infringe the Patents-in-Suit. Magna Mirrors asserts that this reasonable inference is true.

114. Based upon information and belief Ficosa further induces infringement by designing products to have infringing capability, by providing customers with the means to infringe, by instructing them how to infringe, and by providing support services to its customers regarding installation, validation, and maintenance of the Accused Products. Ficosa does so knowing that its customers infringe the Patents-in-Suit.

115. Ficosa's customers directly infringe the Patents-in-Suit by their use of the Accused Products attached to or connected to vehicles. As stated above, upon information and belief, Ford Motor Company, General Motors Company, Volkswagen AG, Nissan Motor Co., Ltd, Chrysler Group LLC (now FCA US LLC) and Toyota Motor Company are customers of Ficosa.

116. Based on the facts alleged above, it is a reasonable inference that Ficosa knew that its Accused Products were especially made or adapted for use to infringe the Patents-in-Suit.

117. Ficosa was notified of its infringement of the Patent-in-Suit at least as early as the filing of this Complaint.

118. Upon information and belief, Ficosa has had knowledge of the Patents-in-Suit since before the filing of this Complaint. Based on the facts alleged above in Paragraphs 88-93, it is reasonable to infer that Ficosa has had knowledge of the Patents-in-Suit since their issuance. Alternatively, if Ficosa asserts that it had no knowledge of the Patents-in-Suit prior to the filing of this Complaint, Ficosa was willfully blind to a competitor's patent rights.

119. It is reasonable to infer based on the facts set forth above in Paragraphs 88-93, that Ficosa knowingly and affirmatively intends to actively induce and contribute to the infringement of the Patents-in-Suit. Magna Mirrors asserts that this reasonable inference is true.

120. Ficosa has made, used, offered for sale, and sold in the United States, and continues to make, use, offer for sale, and sell in the United States Accused Products that have never been licensed by Magna Mirrors to any Ficosa entity. Ficosa's activities induce others to infringe, and/or contributorily infringe the Patents-in-Suit. These activities include, but are not limited to, offering for sale and selling Accused Products to customers. As a non-limiting example, upon information and belief, Ford Motor Company, General Motors Company, Volkswagen AG, Nissan Motor Co., Ltd, Chrysler Group LLC (now FCA US LLC) and Toyota Motor Company are customers of Ficosa for the Accused Products. By making, using, offering for sale, and/or selling the Accused Products in the United States,

Ficosa is infringing claims of the Patents-in-Suit under 35 U.S.C. § 271(b) and/or § 271(c).

121. With regard to the Expired Patents, to the extent Ficosa ceased paying Magna Mirrors royalties and/or failed to pay royalties on the covered/licensed programs prior to the expiration date of the Expired Patents, Ficosa made, used, offered for sale, and sold in the United States Accused Products that infringe the Expired Patents. Ficosa's activities induced others to infringe, and/or contributorily infringed the Expired Patents. These activities included providing Accused Products to customers. As a non-limiting example, upon information and belief, Ford Motor Company, General Motors Company, Volkswagen AG, Nissan Motor Co., Ltd, Chrysler Group LLC (now FCA US LLC) and Toyota Motor Company were customers of Ficosa for the Accused Products. By making, using, offering for sale, and/or selling the Accused Products in the United States, Ficosa infringed claims of the Patents-in-Suit under 35 U.S.C. § 271(b) and/or § 271(c).

122. Ficosa has also made, used, offered for sale, and sold in the United States, and continues to make, use, offer for sale, and sell in the United States Accused Products that were once subject to either the Ficosa License Agreements or the Acquired Licenses but are no longer licensed insofar as Ficosa now operates outside the scope of the licenses due to non-payment of royalties. Ficosa's activities induce others to infringe, and/or contributorily infringe the Patents-in-Suit. These activities include providing Accused Products to customers. As a non-limiting example, upon information and belief, Ford Motor Company, General Motors Company, Volkswagen AG, Nissan Motor Co., Ltd, Chrysler Group LLC (now FCA US LLC) and Toyota Motor Company are customers of Ficosa for the Accused Products. By making, using, offering for sale, and/or selling the

Accused Products in the United States, Ficosa is infringing claims of the Patents-in-Suit under 35 U.S.C. § 271(b) and/or § 271(c).

123.   It is reasonable to infer based on the facts set forth above in Paragraphs 88-93 above, and because of the existence of numerous license agreements between Magna Mirrors and Ficosa, that Ficosa's infringing conduct has been willful, wanton and deliberate. It is also reasonable to infer that Ficosa's actions have been objectively reckless based on the facts set forth in Paragraphs 88-93 above. The actions of Ficosa with regard to infringement of the Patents-in-Suit are willful such that Magna Mirrors is entitled to treble damages under 35 U.S.C. § 284.

124.   Ficosa's infringement of the Patents-in-Suit has been intentional and willful, making this an exceptional case.

125.   Despite any statement to the contrary, and upon information and belief, Ficosa will continue to infringe the Patents-in-Suit unless enjoined by the Court.

126.   Upon information and belief, Ficosa's infringement has resulted in damage to Magna Mirrors and will continue to do so unless enjoined by this Court.

127.   Magna Mirrors has no adequate remedy at law. Unless enjoined by this Court, Ficosa will continue such acts of infringement, causing Magna Mirrors to incur substantial and irreparable damage.

## COUNT III

## BREACH OF THE FICOSA LICENSE AGREEMENTS

### Ficosa NA and Ficosa Mexico

### Non-Payment of Royalties

128.    Magna Mirrors repeats and re-alleges the allegations contained in Paragraphs 1- 127 above as if fully set forth herein.

129.    Pursuant to the Ficosa License Agreements, Ficosa NA/MX has and continues to make, use, sell, have made, offer for sale and/or import lighted exterior mirrors to certain of its customers, including but not limited to Ford Motor Company, General Motors Company, Nissan Motor Co., Ltd, and Toyota Motor Company, for programs that were covered by certain of the Patents-in-Suit owned or controlled by Magna Mirrors.

130.    Based on the Ficosa License Agreements, Ficosa NA/MX was required to pay royalties to Magna Mirrors on the lighted exterior mirrors sold for certain identified vehicle programs.

131.    At least by June 2013, Ficosa NA/MX notified Magna Mirrors that it would no longer pay royalties on sales of mirror assemblies for the licensed programs.

132.    Despite Magna Mirrors' demands for royalty payments on the lighted mirror assemblies for the covered programs, Ficosa NA/MX has failed to do so and refuses to pay the royalties.

133.    Magna Mirrors has fully performed all of its obligations under the Ficosa License Agreements that would entitle it to the royalty payments owed by Ficosa NA/MX.

134. Ficosa NA/MX's refusal to pay Magna Mirrors the royalties owed to Magna Mirrors pursuant to the Ficosa License Agreements constitutes a breach of contract that has damaged Magna Mirrors.

## COUNT IV

## BREACH OF THE ACQUIRED LICENSES

### Non-Payment of Royalties

135. Magna Mirrors repeats and re-alleges the allegations contained in Paragraphs 1- 134 above as if fully set forth herein.

136. Pursuant to the Acquired Licenses, Ficosa has and continues to make, use, sell, have made, offer for sale and/or import lighted exterior mirrors to certain of its customers, including but not limited to Ford Motor Company, General Motors Company, Nissan Motor Co., Ltd, and Toyota Motor Company, for programs that were covered by certain of the Patents-in-Suit owned or controlled by Magna Mirrors.

137. Based on the Acquired Licenses, Ficosa was required to pay royalties to Magna Mirrors on the lighted exterior mirrors sold for certain identified vehicle programs.

138. At least by 2013, Ficosa notified Magna Mirrors that Ficosa would no longer pay royalties on sales of mirror assemblies for the licensed programs.

139. Despite Magna Mirrors' demands for royalty payments on the lighted mirror assemblies for the covered programs, Ficosa has failed and refuses to pay the royalties.

140. Magna Mirrors has fully performed all of its obligations under the Acquired Licenses that would entitle Magna Mirrors to the royalty payments owed by Ficosa.

141. Ficosa's refusal to pay Magna Mirrors the royalties owed to Magna Mirrors pursuant to the Acquired Licenses constitutes a breach of contract that has damaged Magna Mirrors.

## COUNT V

## BREACH OF THE 2002 AND 2004 LICENSE AGREEMENTS

### Ficosa NA/MX

### Representation Provision

142.   Magna Mirrors repeats and re-alleges the allegations contained in Paragraphs 1- 141
       above as if fully set forth herein.

143.   Pursuant to the 2002 License Agreement, Ficosa NA/MX agreed that they would not
       make, have made, use, sell, offer for sale or import any automotive exterior rearview
       mirror system comprising turn signal lights, or any subassembly or component for use in
       an automotive exterior mirror system comprising turn signal lights, in, to or from any
       country in which any valid licensed patent covering such a system, subassembly or
       component is in force except under the terms of the license granted in the 2002 License
       Agreement.

144.   Pursuant to the 2004 License Agreement, Ficosa NA/MX agreed that they would not
       make, have made, use, sell, offer for sale or import any automotive exterior rearview
       mirror system comprising ground illumination lights, or any subassembly or component
       for use in an automotive exterior mirror system comprising ground illumination lights, in,
       to or from any country in which any valid licensed patent covering such a system,
       subassembly or component is in force except under the terms of the license granted in the
       2004 License Agreement.

145.   Despite Ficosa NA/MX's promises and representations, they have and continue to make,
       have made, use, sell, offer for sale, and/or import automotive exterior rearview mirror
       systems comprising turn signal lights and/or ground illumination lights (and assemblies

and components thereof) in, to or from at least the United States, where the licensed patents covering such a system, assembly or component are in force.

146. Ficosa NA/MX's actions constitute direct and separate breaches of the 2002 and 2004 License Agreements that have damaged Magna Mirrors.

147. Magna Mirrors has fully performed all of its obligations under the 2002 and 2004 License Agreements.

## COUNT VI

## BREACH OF THE ACQUIRED LICENSES

### Representation Provisions

148. Magna Mirrors repeats and re-alleges the allegations contained in Paragraphs 1- 147 above as if fully set forth herein.

149. Pursuant to the Acquired Licenses, Ficosa is obligated to refrain from making, have made, using, selling, offering for sale or importing any automotive exterior mirror systems, incorporating lights (such as a security light and/or a warning light and/or a turn signal light), and assemblies and components thereof, in, to or from any country in which any valid licensed patent covering such a system, subassembly or component is in force except under the terms of the licenses granted in the Acquired Licenses.

150. Despite Ficosa's obligations, they have and continue to make, have made, use sell, offer for sale, and/or import importing automotive exterior mirror systems incorporating lights (such as a security light and/or a warning light and/or a turn signal light), and assemblies and components thereof, in, to or from at least the United States, where the licensed patents covering such a system, subassembly or component are in force.

151. Ficosa's actions constitute direct and separate breaches of the Acquired Licenses that have damaged Magna Mirrors.

152. Magna Mirrors has fully performed all of its obligations under the Acquired Licenses.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Magna Mirrors respectfully requests that this Court enter a judgment and order that:

A. Ficosa has infringed one or more of the Patents-in-Suit;

B. Ficosa's infringement of the Patents-in-Suit has been willful and deliberate;

C. Ficosa and its officers, agents, representatives, employees and all others in concert or participation with them, directly or indirectly, be enjoined preliminarily and permanently from infringing, inducing others to infringe and contributing to the infringement of the Patents-in-Suit;

D. Plaintiff Magna Mirrors be awarded damages adequate to compensate for Ficosa's infringement of the Patents-in-Suit together with pre-judgment interest pursuant to 35 U.S.C. § 284;

E. This is an exceptional case and award Magna Mirrors its reasonable costs, expenses, and reasonable attorneys' fees, as well as treble damages in this action in accordance with 35 U.S.C, §§ 284 and 285;

F. Ficosa NA/MX has breached the Ficosa License Agreements;

G. Ficosa has breached the Acquired Licenses;

H. Plaintiff Magna Mirrors be awarded damages for Ficosa's breach of contract concerning royalties in an amount to be determined at trial, in addition to an award of fees, costs and interest to the fullest extent allowed by law;

I.      Ficosa provide an accounting for all royalties paid to Magna Mirrors;

J.      Plaintiff Magna Mirrors be awarded damages for Defendants' breaches of the representation provisions in the Ficosa License Agreements and the Acquired Licenses in an amount to be determined at trial, in addition to an award of fees, costs and interest to the fullest extent allowed by law; and

K.      Plaintiff Magna Mirrors be awarded such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff Magna Mirrors hereby requests a trial by jury on all issue so triable, pursuant to Federal Rule of Civil Procedure 38.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

By: /s/ J. Michael Huget
        J. Michael Huget (P39150)
        Deborah J. Swedlow (P67844)
        Sarah E. Waidelich (admitted in New York; admission to W.D. Mich. pending)
130 South First Street, Fourth Floor
Ann Arbor, Michigan 48104
Tel: (734) 418-4254
Fax: (734) 418-4255
mhuget@honigman.com
bswedlow@honigman.com
swaidelich@honigman.com

*Attorneys for Plaintiff Magna Mirrors of America, Inc.*

Dated: February 19, 2015

32